Start right away with Serrano v. City of New York, 182822. Good morning, Your Honors. May it please the Court, Keith Schepansky from Beldock, Levine & Hoffman, representing the Plaintiff Appellant Stephen Serrano. Your Honors, Plaintiff Appellant Mr. Serrano raises two issues on his appeal. The first is a procedural issue, whether the district court improperly applied facts in favor of the moving party in deciding the summary judgment motion. And the second is a legal issue regarding Mr. Serrano's conduct, even taking the facts as the district court presents it. Just by way of background, Mr. Serrano brought the case with two other plaintiffs, his brother Michael and Samuel Garcia, against the City of New York and individual New York City police officers for federal and state law claims, including false arrest, malicious prosecution. All of the causes of action can be found in the appendix at 17 through 23. The defendants moved for summary judgment. The district court denied summary judgment for Samuel Garcia and Michael Serrano and granted it in favor of the city against Stephen Serrano. In doing so, we argue that the district court violated the rules of the summary judgment motion. They were to take the evidence of the non-movement party, which is to be believed, and all justifiable inferences are to be drawn in his favor. In doing so, the following facts, as we present them, are true. Mr. Serrano and his neighbor, who lived in the same apartment complex, Samuel Garcia, were standing out in front of their apartment complex on July 22, 2015. But what's disputed? Maybe that's, I mean, what are you saying are the disputed facts? Sure. So specifically, the disputed fact is whether or not the undercover police officer, UC-244, heard Mr. Serrano make a statement. Mr. Serrano admitted he made the statement, right? But just yes? Mr. Serrano did admit making the statement to Mr. Garcia. He made it allowed. He made it allowed. He made it allowed while the undercover officer was 20 feet across the street. How about the distance between you and me? I think that it's a little bit more than that, Your Honor. It was across the street. Mr. Serrano was on one side of the street. The undercover officer was with his female partner on the other side of the street. It was in front of the Bronx Zoo. There's traffic going both ways, I believe, on the street. So that is the dispute, whether the officer could have heard 20 feet away? Well, the dispute is actually what the officer said. The officer on page 242 of the appendix in his witness statement, the officer said that Mr. Serrano told a person identified in the witness statement as J.D. Redd, who it later turns out was engaged in a drug transaction with another undercover officer, UC-114, that Mr. Serrano went up to this J.D. Redd, signaled to J.D. Redd that UC-244 was an undercover officer and said, don't do anything, that guy's a cop. That didn't happen. Mr. Serrano? Actually, the officer's testimony changes in a variety of different statements, right? In the statement that follows up, I think it's called a complaint follow-up informational statement, on the night of the arrest, he says that Garcia and Michael Serrano told Serrano that guy is a cop. And then he says Serrano then signals J.D. Redd, don't do anything, he's a cop, which does not seem to me to at least explicitly say that he's claiming he heard your client say anything. Then in his testimony in his deposition, the officer again reiterates, who do you claim made that statement, the statement being he's a cop? Now he says, Mr. Serrano, your client, and his brother, they both said it to Garcia. So that is inconsistent with his original report. Yes, that's correct, Your Honor. And even more damning to the credibility of UC-244 is that Michael Serrano, Stephen Serrano's brother, was inside the family's ground-level apartment at all relevant times. He wasn't there at the relevant time. That's correct. That's correct, Your Honor. He was out running errands for the family. He went back inside the family apartment, which was on the ground-level floor. He was getting ready for work. He didn't come back outside until ---- I'm wondering why you're maintaining that it's a disputed issue of fact, that is to say a fact that a reasonable jury could find, that the officer somehow never heard this statement and made it up. It would be an extraordinary coincidence if he made up hearing a statement that months later Mr. Serrano admits that he made. On the other hand, don't you have an argument that in light of the issue regarding who the officer said he heard make a statement, doesn't that raise a different issue as to whether there's probable cause to arrest everyone here because he heard taking that evidence and the like most favorable to the officer because he heard Michael Serrano or Garcia make this statement? That's correct, Your Honor, and that goes to the second part of the argument. That's the second part of the argument. Yeah, that's correct. And so the officer, whether taking whether the officer said that Garcia said it, that Michael said it, the fact of the matter is that Michael and Samuel were engaged in a conversation. They had nothing to do with the drug activity that was going on down the street. They recognized the person who they later found out was engaged in a drug deal from somebody living in their apartment complex, but it's a big complex. It's four or five stories tall. It's a city block long. It's across the street from the Bronx Zoo. And so they never had any interaction with this person. The only reason that they recognized him is they saw him going in and out of the apartment complex. They later found out when they were driven around in the van going back to the precinct that they lived there through conversation, but, you know, they never placed they never definitively knew that he lived in that facility. And as the Supreme Court held in Ybarra versus Illinois, just being in the same vicinity of drug activity doesn't in and of itself make that unlawful or illegal. And Mr. Garcia, Mr. Serrano, and Mr. Serrano's brother, Michael, had no interaction with the drug activity that was going on in the street. You're saying we'd have to take that as true, at least to the extent of facts like that Michael Serrano was not even there when the officer says he heard Michael Serrano make this statement. And we would have to take as true Stephen Serrano's statement that he didn't make any signal or gesture towards J.D. Red because he says he didn't. That's correct. And that would be a direct conflict of testimony between what he says and what the officer says. That's correct. And I think that the credibility, again, of the officer, UC-244, gets called into question. His partner, UC-114, who made the buy, didn't identify any of the plaintiffs, Mr. Garcia, Michael Serrano, or Stephen Serrano, in his statement. All of this is coming from UC-244. And in UC-244's statement, Mr. Serrano, his brother, and Mr. Garcia were standing within feet of the drug buy. And so for UC-114 not to have any mention at all, in addition to the fact that Mr. Garcia, Michael Serrano, and Stephen Serrano all testified to the same facts, it calls the credibility of UC-244 into question because we have four people giving inconsistent statements. Would you address the false arrest claim? Yes. So the false arrest claim, do you mean under the federal law or the state? State. Okay. So under the first department, second department, there is case law that says the fruit of the poisonous tree doctrine that this court found does not apply to civil claims through towns, does apply to state law claims. So it's our argument that because there was an unlawful search and seizure and the marijuana that Mr. Serrano had on him at the time of his arrest was found through an unlawful search, that he would still have state law malicious prosecution and false arrest claims. There are cases that I cite in the initial brief on, if you can just excuse me for a second, in note 13 on page 20 of the initial brief and also on pages 18 through 19 of the reply brief that finds that both the first department and second department have continued to apply, not follow the towns doctrine in state law cases since the case that the city cites, I forgot the plaintiff's name, but it's against the city's schenectady in the court of appeals, I believe, in 2003. Am I right that if we agreed with you about that but not about whether summary judgment was appropriate on the federal claims, the correct disposition would be to remand to the district court for the district court to decide whether to exercise supplemental jurisdiction over the state claim? I believe that would be true, Your Honor, yes. I've reserved two minutes for rebuttal, so if there are no further questions. Thank you. Okay, thank you. Good morning. Anna Wollenche from the city for appellees. May it please the court. This court should affirm the order granting summary judgment to municipal defendants for three reasons. First, the officers involved in Appellant's arrest had probable cause to believe he was a participant in the sale of heroin, based on their observations at the time. So you're saying probable cause, not even arguable, probable cause. Yes, Your Honor. We're saying in the first instance probable cause, and that brings me to my second point, which is that these circumstances demonstrate at least arguable probable cause, entitling the officers to qualified immunity. And third, Appellants obtained further probable cause when Appellant admitted before he was searched and before he was handcuffed that he possessed marijuana. And that, under Townsville City of New York, extinguishes any false arrest claim that he may have had. On the first point, there are three pieces of critical undisputed evidence here that, when taken in their totality, amount to probable cause. The first is that one of the undercover officers, Undercover Officer 114, was told as he was tasked with buying heroin during this operation, and he was told by the dealers that the, I'm sorry, he was told by a participant in the sale that the dealers were hesitant to sell because the cops were out. The second piece of evidence here is that Appellant, it's undisputed that Appellant made a statement, he testified he made the statement twice in his deposition, and he made a statement that said, look, those two are cops. But that's something that we know today. The issue is what the officers knew at the time. Is there any, what is the testimony that says that the officer heard Stephen Serrano make that statement? Your Honor, that is correct, and that brings me to my third point. Officer, Undercover Officer 244, did hear the statement. He testified at his deposition, and I would like to point out his deposition actually took place before Plaintiff's deposition. And he also made a contemporaneous report in which he noted that Serrano, quote, he's a cop. There's quotation marks around he's a cop. That follows a statement that says he signaled to the person who is J.D. Redd, right? He signaled to him, quote, he's a cop. It doesn't say he said out loud he's a cop. And indeed, right before that, it attributes the out loud statement to Michael and Garcia. Your Honor. Is that wrong? That is what the contemporaneous statement says all the time, and I believe it's reaffirmed by the criminal complaint. He does that. It would be ignoring reality to think that that is not a statement made out loud. And then he testified that. Wait, wait, wait. Ignoring reality to say it's not a statement made out loud? Signaled means generally not out loud. I'm not signaling to you now. I'm speaking to you. Correct, but. So is the deposition testimony that it was said out loud? The deposition testimony is that it was said out loud. So there's arguably a discrepancy between the written statement, which is more or less contemporaneous, and the deposition. We wouldn't say it's a discrepancy. Perhaps the deposition testimony may clarify the contemporaneous statement. But couldn't a reasonable jury find that it's a discrepancy? Well, Your Honor, again, we have to look at the totality of the circumstances here, and the fact that the officers learned. We have to look at the totality of the circumstances in the light most favorable to the nonmoving party. And, of course, we're not in the modern summary judgment practice. We're asking not the question is there no scintilla of evidence or something. We're asking what a reasonable jury can find. But given this arguable discrepancy, couldn't a reasonable jury find that the officer did not hear Stephen Serrano make this statement, or that at most what he heard was a statement emanating from the group? Well, Your Honor, and this is actually where the district court differed as to the claims by the three different plaintiffs. It did find an issue of fact with regard to the other two plaintiffs because they did not admit to making the statement. But here we have appellant Stephen Serrano admit to making the statement, and because the officer did hear the statement being made. What I'm curious about is how individualized does the probable cause have to be? If the officer hears two people conversing and making a statement he's a cop, now let's assume that if he heard it across the street that it would be more than reasonable to infer that the drug dealer also heard it, right? But he heard two people say it. Does that justify him in arresting a third person who is standing nearby, who he doesn't say he heard make that statement? Even if later it turns out that he was wrong and that's the right guy, the guy who actually made the statement is Stephen Serrano. But at the time, if the officer hears or believes he hears Judge Sullivan and Judge Loyer having a conversation that is incriminating, does that let him arrest me? Well, Your Honor, those are not specifically the facts here, because the contemporaneous statement does not, it doesn't not mention Serrano in any capacity. It does, but. It says he made a signal, which Mr. Serrano disputes. That's a disputed issue of fact, whether he made a signal at the, at J.D. Redd. Correct. But then at his deposition, he also, he does say that the statement was made aloud. So I think that the point is, if I say those are cops and I don't signal, that may be a material fact that a jury might consider. If I say those are cops and I do signal, that may put the case over the edge for a jury. So the issue of signaling, I mean, among many other issues, seems to be an important one. Your Honor, the deposition testimony here does clarify the contemporaneous report at the time. And the district court here found that there is a least arguable probable cause. Well, when you say it clarifies, I understand that argument. That's a terrific jury argument to make, that this isn't really an inconsistency. The officer's sworn testimony is that he heard Stephen Serrano say this. And all the cross-examination indicates is that, or establishes, is maybe there was some ambiguity about what he meant in that statement. And it doesn't really create an inconsistency. But, I mean, really see this from the eyes of a jury that actually hears that cross-examination that runs, well, officer, didn't you say in your report that you heard two other people make this statement? Well, yes, I did. But I also said, wait, just answer the question, didn't you say that two other people made the statement? Yes, I said that. Then on redirect, well, oh, but didn't you also say in that statement that you later heard a signal and the statement, he's a cop? Yeah, that's what I said in that statement. Now the cross-examination recrosss and says, officer, but even though you put that in quotation marks, isn't what you actually said that Stephen Serrano signaled in a way that you interpreted as meaning he's a cop? Isn't that what the report actually says? No, I don't read it that way. Now, couldn't a reasonable jury looking at that direct and cross-examination draw the conclusion that it doubts whether the officer actually heard Stephen Serrano, that he really is conflating the signal, which maybe wasn't made, with the statement that he heard emanating from a group that might have included Stephen Serrano? Maybe that actually did include Stephen Serrano. But, oh, wait, what about Michael Serrano? He seems not to have even been there. And the jury winds up saying, you know, on balance, we're not persuaded by the argument that he heard anything of the sort from Stephen. Your Honor, the issues of whether Michael Serrano was present and those are, we believe, are not actually material to the dispute as to whether there was probable cause. Well, I imagine if there were a trial, it wouldn't even be necessary to call the cop about the statement. The statement was made. There's no question. Exactly. Serrano admits he made the statement. Correct, correct. And so the other fact relied on by the district court was the distance of 20 feet. Yes, Your Honor. And actually, I would like to discuss something counsel had said earlier, which is that he's testified or he mentioned that Appellant testified that this was across the street. This was actually not across the street. The testimony on page 188 of the appendix that discusses across the street is in reference to a different undercover officer that he also observed. There is no testimony about whether Appellant was across the street for them. He does mention that the two undercover officers at issue that he identified as officers were walking up and down the block. But I do want to just pivot to our third point, which is that the officers here obtained further probable cause when Appellant admitted he possessed marijuana. And this under Townsville City of New York extinguishes his false arrest claims. And although on appeal Appellant appears to pursue an unlawful search claim, we would like to point out that that claim is not really possible on this record because there was no search before the admission was made. So there's no search for which that can be the basis of this claim. He testified that he was asked whether he has anything on him, and at that point he said, yes, I have marijuana. Before the search was undertaken. Correct, Your Honor. I see I'm out of time. If there are no further questions. I want to ask you to address the State law claim. Suppose we were to agree with you that the Towns rule makes the whole question of who saw, who heard what, at what point in this interaction, said by whom irrelevant. Does Mr. Serrano still have a viable State law claim for false arrest? It is our position that he does not because the controlling case here is Martinez v. Schenectady, which is a 2001 court of appeals case. And although Appellant has cited appellate division cases on this issue, we believe that the court of appeals case is the best barometer for what State law is on the issue of how to treat a probable cause determination of evidence that may have been found after an illegal search in Martinez v. Schenectady. The issue was that a search warrant was executed and the search warrant was later determined to be invalid. But in Martinez v. Schenectady, the court of appeals held that, nevertheless, that probable cause found through evidences through the search warrant was sufficient to defeat a false arrest claim. If there are no further questions, we ask this Court to affirm. Thank you. Thank you, Your Honors. Just to correct the record, Mr. Serrano, at his deposition testimony, and this is beginning in the appendix at A180 and it goes through approximately A188, unequivocally says that the officers that he identified were a male and female, a dark-skinned, either African-American or dark-skinned Latino, across the street and a female officer who he describes as Hispanic. He didn't know the undercover officer who was on his side of the street that was engaged in the buy-and-bust program. The officer that we're talking about is Officer 244. He is the African-American or dark-skinned Latino who Mr. Serrano identified, along with the female cop. Regarding the unlawful search and seizure claim, Mr. Serrano only stated that he had marijuana in his pocket after he was seized by the arresting officers. He didn't volunteer the information before he was under the custody of officers. He was ordered up against the wall. The officer said to him, do you have anything on you? He said, yes, I have some marijuana in my pocket. But that's towns, basically, too, right? Correct, but that goes for unlawful arrest. That doesn't go for the unlawful search and seizure. But wait, the unlawful search that you're asserting takes place after that admission is made. Correct. But you're talking about an unlawful seizure. Then you're talking about something that looks to me more like a stop, for which only a reasonable suspicion is. No, I'm sorry. To clarify, it is the search on that. It is the search of Mr. Serrano that brought the discovery of the marijuana. Right, but if he admitted to the marijuana before they actually went in his pocket and found the marijuana physically, doesn't his saying I have marijuana justify the search, at least unless the statement itself is the product of a Fourth Amendment violation? Well, that's what I'm arguing, Your Honor. Right. But if what happens before that is simply a Terry stop, then we're not really talking about a probable clause or arguable probable clause. We're talking about reasonable suspicion or arguable reasonable suspicion, which is a much easier standard for the defendants to meet here. Your Honor, it's our position that the officers did not even have reasonable suspicion to stop Mr. Serrano or Mr. Garcia. And then I just want to also, before my time runs out, get to the cases in which we cited that the district court ignored. Would the town of East Hampton is the first one. It involved an individual who went up to, unbeknownst to the plaintiff, he went up to an undercover officer who was engaged in a drug purchase in Long Island, said be careful, there are cops around. He was eventually arrested. The court denied summary judgment as to an OGA charge, which is less than the criminal facilitation that the district court said that there's arguable probable cause to arrest Mr. Serrano for, and so that there was a question of fact as to whether the plaintiff had engaged in disorderly conduct, which is a violation, which is an even lower standard than what the district court found. In addition to that, there is a case out of Bronx Criminal Court from 1978. Excuse me. What do those, those are lower court New York cases on the question of what is probable cause? Well, those are going towards a qualified immunity argument that what Mr. Serrano did, even as the district court found, so taking the facts that the district court applied to the summary judgment motion, shows that they didn't have. That's a federal law issue. It is, but there are state penal law charges that the district court said that Mr. Serrano had violated. And so what I'm saying is that there's nothing inherently unlawful about Mr. Serrano stating to Mr. Garcia and only Mr. Garcia his belief that the two people across the street were there. I think that's all common ground, that there's nothing. If all he did was mention to somebody that he has no reason at all to think he's engaged in a drug deal, that's not inherently criminal. I don't think anyone says that that's, disputes that. The question is, is there enough probable cause here to believe that he was signaling this to someone that he knew was a drug dealer? Now that's a harder ask for the defendants, but at the same time, if it could be heard by an officer who is at about the same distance away as the drug dealer, then it's a pretty strong inference that the drug dealer could have heard it too. And then it's just a question of if somebody did something that objectively lets the drug dealer know, does the officer have probable cause to draw the further reasonable inference that a reasonable person might think he meant to do that? So I'm just not getting where the fact that it's innocent to just say it to Garcia, but that's the issue is whether he did just, whether an officer hearing what he admitted happened could infer that it wasn't said just to Garcia. And that was my intention for raising the two other cases that I cited. And while I recognize that they're not circuit level courses, that one's a district level court and one's a criminal court decision, that both of those decisions had the defendant in the criminal court case or the plaintiff in the district court case going up to an undercover officer and yelling out, this guy's an undercover cop, and they found that there was no probable cause to arrest him for that, that it's not an arrestable offense. Thank you very much. Thank you, Your Honors.